IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT FOR TENNESSEE AT KNOXVILLE

DARREN V. BERG,

    Plaintiff,

v.

TIMOTHY IRWIN, THE TENNESSEE
DEPARTMENT OF CHILDREN'S
SERVICES, THE STATE OF TENNESSEE,
JENNIFER JOHNSON AREPALLI,
ELIZABETH SMITH, AMBER WHITE,
and other currently unknown
Jane and John Doe Defendants.

    Defendants.

Civ. Action No.: _____

---

**COMPLAINT FOR DAMAGES BASED ON CIVIL RIGHTS VIOLATIONS AND FIRST AMENDMENT RETALIATION AGAINST ALL DEFENDANTS**

---

Comes the Plaintiff, Darren V. Berg, *pro se*, and for his Complaint for damages against the named Defendants herein would state the following:

    I.    Introduction

Plaintiff, Darren V. Berg, is a duly licensed attorney in the State of Tennessee, who, at all times material hereto, had multiple, pending federal lawsuits against Knox County, Tennessee, its employees, officers and other governmental subdivisions, including, *inter alia*, a lawsuit in federal court naming Judge Gregory McMillian as a Defendant. Judge McMillian is the presiding judge over the Knox County Circuit Court Division IV — the court dealing exclusively with family law matters. The primary difference between Judge McMillan's court's jurisdiction and Defendant

1

Irwin's (the presiding judge of the Knox County Juvenile Court), as the same relates to the issues raised herein, is simply (a) whether a child's parents are married as opposed to unmarried and (b) whether a claim of dependency and neglect is filed by either a party or the Defendant Tennessee Department of Children's Services. In any and all events, any appeal of a decision entered by Defendant Irwin is docketed in Judge McMillan's court.

Given the foregoing, and the Plaintiff's ongoing and pending federal litigation against Judge McMillan, who conversed on, likely, a weekly if not daily basis with Defendant Irwin, should require said Judge Irwin, who is undoubtedly aware of said pending federal litigation, to recuse himself from any inanity brought forth by anyone at any time, alleging improper parentage behavior on the part of the Plaintiff.

What is eminently more problematic, however, is the fact the Department of Children's Services, based on a vendetta by one of the most ignorant agents in its un-refined, un-trained and un-educated repertoire, filed a petition for emergency relief against the undersigned, with no requisite factual or legal bases whatsoever, to support the same.

As this retaliation action was being conspired to by the relevant felonious Defendants as named herein (a lawyer's kids should be out of bounds), he had just re-filed his own federal lawsuit against Knox County in this Court.

In any event, the petition by Defendant Johnson, signed and submitted by Defendant Smith, ultimately resulting in Defendant Irwin's order, precluding the

2

undersigned from so much as seeing or contacting his children with absolutely no factual or legal bases, was based on a narrative sworn to by Defendant Johnson which was either based on either double, triple, quadruple or quintuple hearsay or based on her own inability to work either a computer or a telephone as will be more fully explained hereinbelow.

## II. PARTIES

1. Plaintiff, Darren V. Berg, is a resident of Sevier County and a Citizen of Tennessee. Mr. Berg is a duly licensed attorney in Tennessee.

2. Defendant Timothy Irwin is, upon information and belief, a Citizen and resident of Knox County, Tennessee, said Defendant also being known as "helmet boy," for further purposes of the issuance of alias summons.

3. Defendant Tennessee Department of Children's Services is an agency of the State of Tennessee.

4. Defendant State of Tennessee is a member of the federal compact which may be brought to heel notwithstanding 11th Amendment immunity should the cause of action asserted against the same arise under the first prong of the 14th Amendment.

5. Defendant Johnson-Arepalli is an agent of the Tennessee Department of Children's Services.

6. Defendant Smith is a lawyer representing the Tennessee Department of Children's Services.

3

7. Defendant White is a duly-licensed attorney in the State of Tennessee, serving in this case in the capacity as guardian-ad-litem.

## III. STATEMENT OF JURISDICTION AND VENUE

8. This Court has jurisdiction over Plaintiff's claims brought under Title 42 of the United States Code Section 1983-1988. See U.S.C. &&1331, 1342(a)(3).

9. Venue exists in the United States District Court, Eastern District of Tennessee at Knoxville, pursuant to 28 U.S.C & 1391 (b)(1) and/or (2)

## IV. STATEMENT OF FACTS

10. Darren V. Berg, esq. is a duly licensed lawyer in the State of Tennessee who is in good standing with the Supreme Court.

11. Darren V. Berg, esq. has a background of clerking for various courts. After his graduation from law school, he clerked for Judge Joseph M. Tipton, Tennessee Court of Criminal Appeals. He thereafter clerked for J. Daniel Breen, United States District Judge for the Western District of Tennessee. During Mr. Berg's time clerking for Judge Breen, the United States Court of Appeals for the 6th Federal Circuit had an insufficient number of judges based on a United States Senate filibuster of presidential appointees. As result, Judge Breen, amongst other district court judges, was appointed by the 6th Circuit Executive to sit as a judge for the 6th Circuit. Mr. Berg accompanied Judge Breen at his 6th Circuit appointments during this period and drafted certain proposed opinions for his, and the panel's review.

4

12. After leaving the employment of the federal courts, Mr. Berg joined the firm of Butler, Vines & Babb, PLLC. He thereafter became of partner of said firm.

13. During his time with the aforementioned firm, Plaintiff began to litigate federal civil rights actions in the capacity of representing the plaintiff in said cases, given his background and the fact some of his senior members/partners occasionally and/or routinely filed such lawsuits.

14. In 2017, Plaintiff left the firm – after filing and recovering on behalf of his clients, in numerous federal civil rights cases whether as an employee or partner.

15. Since that time, the Plaintiff has continued, unabated, his insouciant belief of the righteousness inherent with the rectification of violations of those rights guaranteed to the citizens of this subdivision of the federal compact by persons acting under color of state law.

16. For example, and as an illustrative but non-exhaustive or exclusive list, the Plaintiff in the last 10 years alone has been lead counsel on the following federal civil rights matters: Mangum v. Sevier County, No. 3:14-CV-264 (E.D. Tenn.); McGaw v. Sevier County, 3:15-cv-12, (E.D. Tenn.); dismissal of Sevier County reversed and remanded by McGaw, No. 16-6729, (6th Cir. Oct. 31, 2017); Devereux v. Knox County, (E.D. Tenn.); Brawner v. Scott County, (E.D. Tenn.), directed verdict reversed and remanded by Brawner, 18 F.4th 551 (6th Cir. 2021), pet. for certiorari filed Feb. 28, 2022 (by Scott County), originally docketed for conference Apr. 22, 2022 and after further briefing by request of

5

the Supreme Court, re-docketed for conference September 28, 2022; <u>Blevins v. Scott County</u>, (E.D. Tenn.); <u>Miller v. Cocke County</u> (E.D. Tenn); etc. (the list includes probably an additional 5 filings prior to the actions complained of herein—maybe more!).

17. As of the date of the actions complained of herein, the Plaintiff had numerous federal lawsuits pending against Knox County, including actions in two disparate matters, naming the family law judge of Knox County as a defendant in the same: Gregory McMillan. <u>See, e.g.,</u> <u>Abdulnabi v. Knox County</u> (E.D. Tenn.); <u>Hall v. Knox County</u> (E.D. Tenn.).

18. During the pandemic, the Plaintiff filed multitudinous federal civil rights actions against various governmental entities and officers, including cases against Knox County, its mayor, Knoxville, its mayor, and the State of Tennessee and its governor.

19. In 2020, the Plaintiff filed his own cause of action against Knox County, which he voluntarily dismissed and re-filed on August 11, 2022. <u>Berg v. Knox County</u> (E.D. Tenn. Aug. 11, 2022) (alleging civil rights violations, a vendetta and retaliation).

20. Prior to any of the issues complained of herein, the Plaintiff had represented another family wherein Defendant Johnson was the DCS investigator. In that case, Defendant Johnson, demanded numerous things which were either (a) not in compliance with an enforceable or existing order of the applicable court or (b) in utter disregard and violation of the constitution of the United

6

States so as to shock the conscience, resulting in the Plaintiff inquiring of Defendant Johnson whether when she fell out of the "stupid tree," if she had hit every branch on the way to the ground.

21. The incident noted in the preceding paragraph occurred prior to the filing of suit against Judge McMillian.

22. Judge McMillian, upon information and belief, routinely, on either a daily basis, or close to it, discussed matters with Defendant Irwin as the appeal from Defendant Irwin's kangaroo court lands in Defendant McMillian's court. Moreover, based upon litigation in which the Plaintiff was named counsel in the Supreme Court of Tennessee, both on brief and oral argument, Cox v. Lucas and Mineyard v. Lucas, (Tenn. 2019), the Plaintiff had an integral role in the Supreme Court of Tennessee's interpretation of the "exclusive original jurisdiction" language of this State's statutory scheme relating to claims of dependency and neglect, which will become more acutely pertinent, *infra*.

23. Shortly thereafter, Plaintiff's "baby mama"[1], while engaging in an-out-of-this-world-months-long-epic-bender, made a criminal complaint against him alleging non-existent domestic assault wherein, although the non-existent allegations occurred at Plaintiff's house, the "baby mama" drove, while severely and substantially intoxicated, to her mother's house and filed her false criminal allegations at said location.

---

[1] The mother of his youngest daughter.

7

24. Ultimately, a warrant was issued for Plaintiff which charge was ultimately dismissed by a special prosecutor after Plaintiff filed his initial and now re-filed claims against Knox County for lack of evidence—a refrain so prevalent with regard to the Plaintiff that he should not have to continue to plead "Help!" from federal court but nevertheless finds himself in a bit of a quandary: either stand as a stalwart between the machinations of the State when it violates the rights of its citizens or acquiesce to the "lets play ball" attitude of perhaps the most politically corrupt county in Tennessee and accept the unacceptable. Not even close to a Hobsian's choice for the Plaintiff.

25. During the pendency of the same, the "baby mama" was arrested on a Monday afternoon for DUI—while illegally in possession of Plaintiff's vehicle—and registered a .28 BAC with the Plaintiff's daughter in the back seat.

26. As a result, DCS filed a complaint against both the "baby mama" and the Plaintiff (but only based upon the allegation he had committed domestic assault), resulting in DCS stapling to his front door an ex parte order, removing his custodial rights from the daughter he has with "baby mama" and giving full and exclusive custodial rights to "baby mama's" mother.

27. At the initial hearing date and time, the Plaintiff had other client-based obligations and could not attend, but nevertheless appeared in Juvenile Court later that morning or early afternoon. During the hearing, Plaintiff was berated by DCS agents and lawyers (based upon his filing of a limited notice

8

of appearance as the department's process server had "nailed" the process to his front door) that his appearance waived lack of service of process.[2]

28. When the Plaintiff arrived at the Juvenile, i.e., kangaroo, Court of Knox County, after he had, in the parlance of that dearly-beloved Tennessean, the King of Rock, Elvis Presley, "taken care of business," he was called into the main courtroom, presided over by Defendant Irwin, and berated for his tardy attendance. After explaining to Defendant Irwin and other troglodytes and court jesters, likely in the employment directly or indirectly of the State of Tennessee, that Due Process was a concept that unlike the "Land of Oz" or "Wonderland," actually applied in his courtroom, Defendant Irwin lodged his opinion, likely gleaned from the locker room of his former professional endeavor (where he excelled, without question, unlike his quixotic desire to emulate his "fearsome foursome" teammate, who, ultimately was appointed to the Minnesota Supreme Court) that Plaintiff's appearance based on the filing of a limited notice of appearance to challenge the sufficiency of service of process waived said issue when Plaintiff appeared to challenge the same— a legal opinion in the nature of those that one would expect to find in the "Land of Oz" or "'Wonderland" but not in the United States.

---

[2] The Juvenile Court of Knox County reminds one of either Dorothy's clicking of her heels and ascendance into the "land of Oz" or Alice's unintended adventure into "Wonderland," as all of the foregoing are locales that clearly seem to constitute a foray into, as Captain Kirk once quipped to Spock, "the undiscovered country." Either way, said Court is so devoid of adherence to either the substantive or procedural due process mandates that apply to it to require immediate federal intervention and the Plaintiff would hereby request this Court refer this matter immediately for Hobbs Act, Civil Rights Act, and RICO violations to either the United States District Attorney for the Eastern District of Tennessee of Main Justice.

9

29. Plaintiff, apparently stupidly, forgot during his appearance in Defendant Irwin's court as noted herein, supra., to ask his own entourage to accompany him to court. However, Defendant Irwin had his entourage present (notwithstanding the court jesters as previously noted) in the form of at least 10 deputies of the Knox County Sheriff's Department who made a team-like entrance into the courtroom when Plaintiff appeared and surrounded him as if he were some form of defensive end or criminal.

30. Plaintiff, with the SWAT team of juvenile court waiting for the order of Defendant Irwin to pounce, thereafter explained, in precise detail that the recent decisions of the Supreme Court in Cox and Mineyard required dismissal of DCS's unfounded and unsupported averments against him as he had previously filed an action alleging dependency and neglect against "baby mama," which he noted was pending in the Knox County Chancery Court.

31. Defendant Irwin retorted, as only one suffering from either early onset dementia or CTE would possibly do, that he had engaged in *ex parte* communications with the Chancellor in front of whom the Plaintiff's action against "baby mama" had been filed and that they (the judges) had collectively agreed that Defendant Irwin should hear the case.

32. In response, and recognizing the fact Defendant Irwin was clearly oblivious of the fact he had just admitted to vitiating the rights of the Plaintiff, the Plaintiff attempted to explain the recent decisions of <u>Cox</u> and <u>Mineyard</u> as the same applied to the case at bar. Defendant Irwin, who had printed out said

10

cases as they had been attached to the Plaintiff's motion to dismiss or transfer, explained to the Plaintiff that he did not understand the holding of the cases in question. The Plaintiff thereafter noted to Defendant Irwin that reading is not actually a city in China but a real thing, explaining Plaintiff was counsel in the Supreme Court in those cases, while simultaneously inquiring of said tribunal whether it was present during oral arguments in the Supreme Court as the Plaintiff had not noted his presence in the gallery.

33. After not having custodial rights to his daughter for nearly 8 months based on DCS made up insanity (as if the Plaintiff were DUI to the tune of .28 at 12:30 p.m. on a Monday), the DCS petition was ultimately dismissed against the Plaintiff.

34. As noted hereinbefore, the Plaintiff is suing either Knox County or other State governmental subdivisions in multiple cases.

35. In or about early August, 2022, Defendant Johnson came to Plaintiff's house.

36. Plaintiff, lives on the side of a mountain and seven levels exist from the top floor of the house to the pool below.

37. Defendant Johnson, who had apparently been knocking on the door for sometime, was agitated, to say the least, when Plaintiff approached her some 20 minutes later.

38. When Plaintiff approached Defendant Johnson, he had been cleaning the filter in the pool and vacuuming her same, just prior to running into her.

11

39. Defendant Johnson was upset, accusing Plaintiff of intentionally refusing to respond to her knocks on his front door, to which the Plaintiff explained that although her apartment complex and his house were approximately the same amount of square feet, he wouldn't expect her to come to the front door if he was knocking at the door of her neighbor, four floors below.

40. Defendant Johnson was then told by Plaintiff, after she asked to interview his children without explanation as to why, that she needed to seek medical advice in the hopes of excising the portions of the stupid tree still remaining.

41. At some point thereafter, DCS filed a petition against Plaintiff, removing his right to custody and communication with both of his children, based upon a sworn statement from Defendant Johnson that the hearsay allegations she was provided were actually provided by an anonymous source and that the remaining allegation alleging the Plaintiff had intentionally placed his (older) child in the presence of a SOR registrant (which was demonstrably and provably false by the State's own databases), none of which were either based on personal knowledge or in accordance with the State's records.

42. Defendant Smith signed the petition, seeking the removal of Plaintiff's children based on absolutely no evidence (other than the State's own records which disprove one of the allegations), despite her ethical requirements to conduct a good faith investigation and to submit to the Court actual, as opposed to anonymous (likely DCS itself at the behest of Knox County) allegations with no actual evidentiary support.

12

43. To compound this idiocy, Defendant Johnson interviewed the Plaintiff's children who refuted the hearsay allegations.

44. Nevertheless, and in violation of the Rules of Juvenile Court and Due Process, Defendant Irwin signed an ex parte Order, while full well knowing, as all Defendants knew, Plaintiff was an attorney, had been represented by another Attorney in prior DCS insanity, and therefore, no legal basis existed for an ex parte Order to issue.

45. The unconstitutional actions as noted herein, devoid of evidentiary support, not only violated Plaintiff's Due Process Right to liberty but more importantly constituted First Amendment harassment, intimidation and retaliation, and therefore, neither judicial or state immunity statutes protect these felonious miscreants.

46. Defendant White, after being appointed guardian ad litem by court in question and after having the situation so intricately explained to her that no misapprehension could have occurred, has continued unabated to adhere to the Order signed by Defendant Irwin, and in so doing, conspiring with the Defendants named herein to retaliate against Plaintiff, intimidate him from continuing to prosecute his federal cases, and deprive him of his liberty interest in rearing his children—both of whom attend private school at exorbitant rates or tuition.

## V. CAUSES OF ACTION

A. 42 U.S.C. Section 1983, 1985-86

13

47. Plaintiff incorporates by reference the entirety of the foregoing Complaint as if fully set forth herein.

48. Based on the foregoing, these Defendants, acting individually and in concert, have violated and blatantly so, Plaintiff's liberty interest in rearing his children.

49. All Individual Defendants named herein violated Plaintiff's right to liberty in rearing his children and intentionally acted with malice aforethought, or acquiescence to the same, to intimidate, harass and retaliate against Plaintiff based upon his pre-eminent status as a civil rights attorney.

50. Based on the foregoing, these Defendants' actions are a clear case of intimidation, harassment, and retaliation against an attorney suing the County in federal Court.

51. They also constitute, as to each Defendant, a violation or a conspiracy to violate, the rights set forth in the preceding paragraph or his right to liberty as noted hereinbefore.

52. Therefore, Plaintiff sues all Defendants for violation of his constitutional rights and he would seek all damages available under federal and state law that may be applicable at trial.

### B. MUNICIPAL LIABILTY

53. Plaintiff incorporates by reference the entirety of the foregoing Complaint as if fully set forth herein.

54. Pursuant to 42 U.S.C. Section 1983, a State or its subdivisions may be liable to a Plaintiff, notwithstanding 11th amendment immunity, for any of its customs, policies or procedures which constitute the driving force behind the alleged constitutional violation of itself or its officers so long as the violation is alleged to violate the first prong of the Fourteenth Amendment. Additionally, and under the same principles, a State may be held liable if it or its supervisory officials ratify the conduct of its officers.

55. In this case, Defendants DCS, and State of Tennessee are liable to the Plaintiff based on the fact their customs, policies and/or procedures were the driving force behind the constitutional violations complained of herein. Moreover, said Defendants are liable as their supervisory officials clearly ratified Defendant Johnson's vendetta and numerous constitutional violations.

56. Based on the foregoing, Plaintiff sues the state defendants and would seek all damages as previously sought herein.

**PRAYER FOR RELIEF**

Premises considered, Plaintiffs would ask this Court to:

A. Issue process, requiring these defendants to answer this Complaint and appoint a jury to try this cause.

B. Award Plaintiffs damages in the amount of $50,000,000.00.

C. Award Plaintiffs court costs and discretionary costs.

D. For such other or further relief to which they may be entitled.

Respectfully submitted, this 19th day of September, 2022.

/s Darren V. Berg
PO Box 453
Knoxville, TN 37901
dberglawfirm@gmail.com
(865) 773-8799
Pro se

16

Case 3:22-cv-00325-TRM-JEM   Document 1   Filed 09/19/22   Page 16 of 16   PageID #: 16